FILED BY __TM__ D.C.

APR 29 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-MJ-8171-BER

IN THE MATTER OF )
THE EXTRADITION OF ) **Under Seal**
LUCAS CARVALHO ROLLO )

**COMPLAINT**
**(18 U.S.C. § 3184)**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to Brazil.

2. There is an extradition treaty in force between the United States and Brazil, the Treaty of Extradition Between the United States of America and the United States of Brazil, U.S.-Braz., Jan. 13, 1961, 15 U.S.T. 2093, *as amended by* the Additional Protocol to the Treaty of Extradition of January 13, 1961, Between the United States of America and the United States of Brazil, U.S.-Braz., June 18, 1962, 15 U.S.T. 2112 (collectively, the Treaty).

3. Pursuant to the Treaty, the Government of Brazil has submitted a formal request through diplomatic channels for the extradition of Lucas Carvalho Rollo ("CARVALHO").

4. According to the information provided by the Government of Brazil, CARVALHO has been convicted of "Rape of Vulnerable" (having intercourse or practicing a libidinous act with a minor) in violation of Article 217-A of the Brazilian Penal Code, and has been sentenced to nine years and four months' imprisonment.

5. This conviction was based on the following facts:

a. CARVALHO, a Brazilian national and U.S. citizen, lived with his aunt ("CARVALHO's aunt") in Brazil beginning in January 2013, up to and including February 2, 2014. According to Brazilian authorities, CARVALHO sexually assaulted his distant minor female cousin on February 2, 2014, and at least one other prior occasion while CARVALHO was staying at his aunt's house. As of February 2, 2014, CARVALHO was twenty years old, and the victim was six years old.

b. According to the victim's father on the afternoon of February 2, 2014, he and the victim were at the residence of CARVALHO's aunt, where he was watching a soccer game on the television downstairs. He stated that his daughter went upstairs, where CARVALHO (and no one else) was. When the victim had been upstairs for what the victim's father considered to be an unusual amount of time (approximately fifteen minutes), the victim's father called for her. The victim did not respond initially, but she came downstairs after the victim's father shouted again for her, and she said that she was going to take a shower. The victim's father questioned why she was planning to shower at that time of day, and the victim explained that she wanted to shower because she was bleeding.

c. According to the victim's father, he then noticed that the victim's shorts were "soaked with blood." He asked her what had happened, and if CARVALHO had done something to her. The victim said that CARVALHO had been on top of her, and that he had applied a substance to her vagina and buttocks and had asked her to raise her buttocks for him. The victim's father went upstairs and confronted CARVALHO, who was then taking a shower. CARVALHO denied having touched the victim. The victim's father brought CARVALHO downstairs and asked the victim if she had meant what she had said earlier about CARVALHO.

2

The victim confirmed what she had reported earlier, stating that CARVALHO had been on top of her.

    d.    The victim's father called CARVALHO's aunt to ask for help because he was so angry that he thought he might harm CARVALHO. CARVALHO's aunt arrived, along with other relatives, and CARVALHO again denied that anything had happened with the victim. However, the victim's father and others took CARVALHO, along with the victim and her bloody clothes, to the local police station to report the incident.

    e.    In an interview with the police, the victim stated that while she was in a bedroom upstairs at the residence of CARVALHO's aunt, CARVALHO had applied a substance to her private parts and had laid on top of her, asking her to raise her buttocks. She was taken for a medical examination, which revealed no signs of bleeding or penetration of her hymen or anus.

    f.    Brazilian law enforcement conducted a search at the residence of CARVALHO's aunt. In the bedroom identified by the victim, Brazilian law enforcement located a bedsheet containing bloodstains.

    g.    Biological samples obtained after the February 2nd incident provided DNA evidence corroborating that CARVALHO assaulted the victim. Samples from the victim's shorts and underwear and an undershirt worn by CARVALHO were determined to contain human blood and semen (but no spermatozoids), and the bedsheet seized by police was determined to contain human blood. The samples from the victim's shorts and the bedsheet contained genetic profiles identical to those of the biological samples collected from CARVALHO and the victim. A single Y chromosome haplotype (*i.e.*, group of genes) identical to that identified in the biological sample collected from CARVALHO was determined to be

present in samples from the victim's genital secretion, underwear, and shorts; and also in samples from CARVALHO's tee shirt and the bloody bedsheet.[1]

      h.    When interviewed by the police, the victim's mother stated that she had not been at the residence of CARVALHO's aunt on the day of the incident. However, she stated that in general, when the victim was at the residence of CARVALHO's aunt, she always spent time in CARVALHO's bedroom. The victim's mother further stated that she had noticed redness and swelling in the victim's vaginal area on two previous occasions after the victim had been at the residence of CARVALHO's aunt. The victim's mother said she had asked the victim whether anyone had touched her, and that the victim had not reported anything; however, the victim once mentioned that she had been playing "pillow" with CARVALHO.

      i.    In a follow-up interview with police, the victim repeated her previous account of what had happened, and confirmed that the blood on her body and clothes on February 2, 2014, was from CARVALHO's "cock." The victim also stated that CARVALHO had molested her previously, "every day," always in his bedroom, and had asked her to keep what happened there a secret.

      j.    On April 10, 2014, the Brazilian Federal Prosecution Service filed an information charging CARVALHO with knowingly and willfully engaging in sexual behavior with the minor victim from an unknown date until February 2, 2014, in violation of Article 217-A of the Brazilian Penal Code. CARVALHO participated in his trial, and testified that he did not assault the victim, claiming that he had gone out with friends on the afternoon of February 2,

---

[1] According to Brazilian authorities, the probability of selecting a person having the same haplotype at random in the male population is approximately 1 in 14,928.

4

2014, returned home to take a shower, and only saw the victim downstairs, and not upstairs. On February 3, 2015, the Second Criminal Court of Taguatinga acquitted CARVALHO. Following the prosecution's appeal of the acquittal, on June 3, 2015, the Court of Justice of the First Criminal Division reversed the judgment of acquittal, and convicted CARVALHO of twice violating Article 217-A of the Penal Code. The court sentenced CARVALHO to nine years and four months' imprisonment. On August 27, 2016, the Superior Court of Justice denied CARVALHO's appeal of his conviction.

7. CARVALHO may be found within the jurisdiction of this Court at 5030 Canal Circle, Lake Worth, Florida 33467.

8. Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offense for which extradition is demanded is provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Brazil, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9. A copy of the treaty, copies of the diplomatic notes from Brazil, and the certified documents submitted in support of the request (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

10. CARVALHO would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Brazil, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
Jessica Kahn Obenauf
Assistant United States Attorney

Sworn and subscribed before me in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by _TELEPHONE_
this 29 day of April, 2020,
in West Palm Beach, Florida.

_____
HONORABLE BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-MJ-8171-BER

IN THE MATTER OF            )
THE EXTRADITION OF          )        **Under Seal**
LUCAS CARVALHO ROLLO        )

## COMPLAINT COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?
   _____ Yes   \_\_\_X\_\_\_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?
   _____ Yes   \_\_\_X\_\_\_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   /s/ *Jessica Kahn Obenauf*
      JESSICA KAHN OBENAUF
      Assistant United States Attorney
      Florida Bar No. 0052716
      99 Northeast 4th Street
      Miami, FL. 33132-2111
      Tel: (305) 961-9317
      Fax: (305) 530-7976
      Jessica.obenauf@usdoj.gov